**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MAI TAHOUN et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF STATE et al., <br><br> *Defendants*. | Civil Action No. 21-1658 (TJK) |

### MEMORANDUM OPINION

Plaintiffs are diversity-visa lottery winners awarded the opportunity to apply for immigrant visas in Fiscal Year 2021. But none of them received a visa by June 2021, so they sued. A few months later, Defendants moved to dismiss, arguing that the Court lacked subject-matter jurisdiction over the case. The Court stayed the case pending the D.C. Circuit's decision in *Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024). With the benefit of *Goodluck*, the Court agrees with Defendants that it lacks jurisdiction. Thus, it will grant their motion and dismiss the case.

**I.    Background**

   **A.    Legal Background**

Each fiscal year, the Immigration and Nationality Act ("INA") authorizes the Department of State to issue up to 55,000 visas—known as "diversity visas"—to would-be immigrants "from countries with low rates of immigration to the United States." *Goodluck*, 104 F.4th at 921; 8 U.S.C. §§ 1151(a)(3), (e), 1153(c). The process begins with a lottery, in which millions participate. *Goodluck*, 104 F.4th at 921; 22 C.F.R. § 42.33. "From among these applicants, the Department randomly selects a number that it estimates will ensure filling the authorized diversity visas 'for the fiscal year in question.'" *Goodluck*, 104 F.4th at 921–22 (quoting 22 C.F.R. § 42.33(c)).

Though selection in this lottery does not grant or entitle non-citizens to a visa, it does make them eligible to apply for one. *Id.* at 922. But applying is a rigorous process in which the non-citizens must "personally appear for an interview before a consular officer" and show that they "satisfy all admissibility requirements." *Id.* (citing 22 C.F.R. §§ 40.1(*l*)(2), 42.33(g); 8 U.S.C. § 1182(a)). Still, even that is not enough to guarantee a visa: diversity-visa applicants must also "receive" their visas before the end of the fiscal year because they "remain eligible to receive such visa[s] *only* through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II) (emphasis added). "In other words, 'when midnight strikes at the end of the fiscal year, those applicants without visas are out of luck.'" *Goodluck*, 104 F.4th at 925 (quoting *Yung-Kai Lu v. Tillerson*, 292 F. Supp. 3d 276, 282 (D.D.C. 2018)).

### B. Factual Background

Plaintiffs are a group of immigrants and would-be immigrants who—along with their immediate families—were selected through the lottery for the opportunity to apply for diversity visas in Fiscal Year 2021. ECF No. 7 ¶¶ 12–185. But their applications hit snags with the outbreak of the COVID-19 pandemic, which "significantly hampered the State Department's administration of the diversity-visa program." *Goodluck*, 104 F.4th at 922. In March 2020, the Department promulgated "guidance instructing consular officers how to respond to COVID," which included suspending "all routine visa services—including the processing of applications for diversity visas"—even though "certain mission-critical visa services" were allowed to continue. *Id.* (internal quotation marks and quotations omitted). This policy was eventually superseded by the Department's "Diplomacy Strong" framework, which established a multi-phase resumption of services, even though it mandated that diversity-visa applications "should be adjudicated only to prevent complete stagnation." ECF No. 7 ¶ 227 (internal quotation marks omitted).

The snags got bigger. In April 2020, President Trump—using the discretionary authority

given to him in 8 U.S.C. § 1182(f)[1]—issued Proclamation 10014, which "suspended" "[t]he entry into the United States of aliens as immigrants." 85 Fed. Reg. 23441, 23442 (Apr. 27, 2020); ECF No. 7 ¶ 210. Under the Proclamation, "the State Department declined to issue diversity visas," arguing that a bar on a non-citizen's entry similarly barred granting him or her a visa. *Goodluck*, 104 F.4th at 922. Then, in November 2020, the Department updated the Diplomacy Strong framework and "instructed consular posts to follow a four-tiered prioritization scheme for addressing the backlog, with diversity visas in the lowest-priority tier," presumably because it was declining to issue them under the Proclamation anyway. *Id.*; ECF No. 7 ¶ 234. The Proclamation was eventually extended until February 2021, when President Biden revoked it. *Goodluck*, 104 F.4th at 922; ECF No. 7 ¶ 213. Later, the Department rescinded the guidance relegating diversity visas to the lowest-priority tier. *Goodluck*, 104 F.4th at 922.

### C.     Procedural Background

In June 2021, Plaintiffs sued, then amended their complaint about a month later. ECF Nos. 1, 7. They bring seven counts. In Count I, Plaintiffs bring a non-statutory cause of action, alleging that "Defendants' practices, rules, and actions" described above are ultra vires; they ask the Court to "declare that these statutory violations, both past and continuing, have harmed Plaintiffs." ECF No. 7 ¶¶ 250–58. In Count II, Plaintiffs claim that Defendants breached their "duty to respond to Plaintiffs' [diversity-visa] submissions and adjudicate Plaintiffs' . . . visa applications in good faith," allegedly violating the Administrative Procedure Act ("APA"). *Id.* ¶¶ 259–270. Next, in Count III, Plaintiffs again allege that Defendants violated the APA, this time based on the

---

[1] "Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate." 8 U.S.C. § 1182(f).

3

purportedly arbitrary and capricious nature of the "practices, rules, and actions" described above. *Id.* ¶¶ 270–289. Then, in Count IV, Plaintiffs say that "Defendants' failure to adjudicate Plaintiff's [sic] . . . applications constitutes final agency action unlawfully withheld or unreasonably delayed," again in violation of the APA. *Id.* ¶¶ 290–91. In Count V, Plaintiffs allege that Defendants once more violated the APA by imposing the Diplomacy Strong framework and the "4 Tier prioritization rule" without sending either through notice-and-comment rulemaking. *Id.* ¶¶ 292–96. In Count VI, Plaintiffs contend that Defendants' failure to adjudicate their visas violated their Fifth Amendment due-process rights. *Id.* ¶¶ 297–303. Finally, in Count VII, Plaintiffs bring a non-statutory cause of action for equitable relief, asking the Court to toll or equitably estop Defendants from denying their visa applications because of the time bar in 8 U.S.C. § 1154(a)(1)(I)(ii)(II). *Id.* ¶¶ 304–11. Alternatively, Plaintiffs seek individual writs of mandamus compelling Defendants to adjudicate their visa applications. *Id.* ¶¶ 312–24.

Plaintiffs seek several forms of relief in connection with these seven counts. First, they seek injunctive relief, asking the Court to compel Defendants to adjudicate Plaintiffs' visa applications "without reference or use of" the challenged policies, "to implement a rational process for Plaintiffs to request consideration for waivers, emergency adjudication, transfer to other consulates and/or expedited visa interview scheduling," or to "preserve each named Plaintiff's visa eligibility until final judgment is rendered." ECF No. 7 at 81. Second, they seek writs of mandamus "directing that [Defendants] adjudicate Plaintiffs' diversity immigrant visa applications before 30 September 2021." *Id.* Third, they seek nominal damages. *Id.* And fourth, they seek declarations that "Defendants have acted in bad faith," that the challenged policies are unlawful, and that applying the statutory time bar would violate Plaintiffs' rights. *Id.* at 80–81.

In September 2021, Defendants moved to dismiss for lack of subject-matter jurisdiction

4

and for failure to state a claim. ECF No. 22. But while their motion was pending, the D.C. Circuit scheduled oral argument in *Goodluck v. Biden*, a similar case challenging the Government's conduct related to the 2021 diversity-visa program. So in July 2022, the Court stayed the case pending resolution of that appeal. The D.C. Circuit published the *Goodluck* decision in June 2024, and the Court accordingly ordered the parties to file supplemental briefs addressing the decision's impact on this case. Minute Order of Oct. 18, 2024. They have now done so. ECF Nos. 36–39.

In their supplemental briefing, Defendants argue that *Goodluck* requires the Court to dismiss Plaintiffs' claims for injunctive relief as moot. ECF No. 36 at 1. They then renew their prior arguments that Plaintiffs lack standing to pursue their other forms of relief. *Id.* Plaintiffs, for their part, concede that *Goodluck* and other intervening developments moot at least some of their claims. For example, because the challenged policies were rescinded, Plaintiffs have withdrawn Count V—which alleged that at least some of the challenged policies had to go through notice-and-comment rulemaking—and agree that their request for the Court to declare those policies unlawful is moot. ECF No. 37 at 2. They also withdraw their request for the Court to declare unlawful the statutory time bar's application, to order Defendants to schedule medical examinations for them, and to issue writs of mandamus requiring adjudication of their visa applications by September 30, 2021. *Id.* But they maintain that, in all other respects, the case still presents a live controversy. *Id.*[2]

## II.   Legal Standards

Under Rule 12(b)(1), Plaintiff has the burden to establish the Court's subject-matter

---

[2] Following this first round of supplemental briefing, the Court ordered the parties to file a second round of briefing addressing whether Defendants have waived sovereign immunity relating to Plaintiffs' claims for nominal damages. Minute Order of Apr. 23, 2025. Based on that briefing, Defendants now also argue that the Court lacks jurisdiction over Plaintiffs' claims for nominal damages because of their sovereign immunity. ECF No. 40 at 2.

jurisdiction. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006).  In evaluating a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and . . . grant[] [Plaintiff] the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted).  But when a party asserts a case is moot, "[t]he initial 'heavy burden' of establishing mootness lies with [that] party."  *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (quoting *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 459 (D.C. Cir. 1998)).

### III.   Analysis

Defendants argue that *Goodluck* requires the Court to dismiss Plaintiffs' claims for injunctive and mandamus relief as moot and that the Court lacks subject-matter jurisdiction over the rest of Plaintiffs' claims for other reasons.  The Court agrees, so it will grant Defendants' motion and dismiss the case.[3]

#### A.    Plaintiffs' Claims for Injunctive and Mandamus Relief Are Moot

In *Goodluck*, as here, the plaintiffs argued that the Government's challenged policies "unlawfully prevented them from receiving visas before the fiscal-year-end deadlines."  *Goodluck*, 104 F.4th at 922.  The district courts in the underlying cases "largely agreed" and "ordered the Department to prioritize processing and issuing diversity visas past the end of the fiscal years."  *Id.*  The Circuit, however, found that "[t]he district courts had no authority to require the Department to issue diversity visas past the applicable statutory deadlines."  *Id.* at 923.  Its reasoning focused on fundamental principles of equity.  The Circuit noted that "courts cannot order relief that conflicts with a clear and constitutionally valid statute."  *Id.* at 924.  And that is especially so

---

[3] The Court notes that at least some of Plaintiffs' applications have already been adjudicated and granted.  ECF No. 22-3 ¶ 17.  The Court need not decide whether this moots those Plaintiffs' claims because, as discussed below, the Court lacks jurisdiction for other reasons.

6

in the immigration context, where courts lack "the power to make someone a citizen." *Id.* (quoting *INS v. Pangilinan*, 486 U.S. 875, 883 (1988)). Thus, the Circuit concluded that "instructing the Executive Branch to reserve, process, and issue visas on terms devised by the courts"—terms that expressly contravened 8 U.S.C. § 1154(a)(1)(I)(ii)(II)'s time bar—was "irreconcilable with these settled principles." *Id.* at 925. As a result, once the relevant fiscal year ended, "the plaintiffs lost their eligibility for diversity visas." *Id.* at 927. And courts lack authority to grant "prospective relief" to force "the State Department to keep processing applications for diversity visas and issuing the visas beyond the end of the relevant fiscal year[]." *Id.* at 926, 929.

*Goodluck*'s holding dooms much of Plaintiffs' case on mootness grounds. They request, for example, an order compelling Defendants "to adjudicate promptly Plaintiffs' Pending [sic] [visa] applications without reference or use of the Diplomacy Strong Framework and 4-tier prioritization rules." ECF No. 7 at 81. They also request an order instructing Defendants "to implement a rational process for Plaintiffs to request consideration for waivers, emergency adjudication, transfer to other consulates and/or expedited visa interview scheduling" or to "preserve each named Plaintiff's visa eligibility until final judgment is rendered." *Id.* While the Court may have been able to grant such relief before the end of Fiscal Year 2021, it lacks such authority now. *Goodluck*, 104 F.4th at 925. These three forms of relief would require Defendants to take steps to "reserve, process, [or] issue visas" beyond the statutory fiscal-year deadline. *Id.* Because that is the relief the Circuit forbade in *Goodluck*, Plaintiffs' claims, to the extent they seek such relief, are moot.

Though "the legal availability of a certain kind of relief" typically goes to the merits of a case, not whether it is moot, there is an exception when the requested "remedy is so implausible that it is insufficient to preserve jurisdiction." *Goodluck*, 104 F.4th at 927 (internal quotation

7

marks and quotation omitted). After *Goodluck*, the availability of this requested relief is so implausible that the passage of the statutory deadline moots these claims. *See Gjoci v. Dep't of State*, No. 21-cv-0294, 2024 WL 4263775, at *4 (D.D.C. Sept. 23, 2024).

Still, Plaintiffs maintain that the Court has jurisdiction over at least some of their claims for relief because, rather than asking for the issuance of a visa, Plaintiffs seek only an *adjudication* of their visa applications, even if the result of that adjudication would be a preordained denial. ECF No. 37 at 4, 9–10. Because this relief would not require Defendants to issue a visa, Plaintiffs argue, it does not contradict *Goodluck*. Not so. In *Goodluck*, the Circuit disavowed more than just requiring Defendants to *issue* the requested visas; it also held that "district courts ha[ve] no authority to order the State Department to *keep processing* applications for diversity visas . . . beyond the end of the relevant fiscal years." *Goodluck*, 104 F.4th at 926. That is what Plaintiffs want—an order compelling Defendants to keep processing Plaintiffs' doomed applications until they are finally rejected. The Court "ha[s] no authority" to enter such an order. *Id.*

For these reasons, Plaintiffs' claims for equitable and mandamus relief compelling Defendants to process or adjudicate Plaintiffs' visa applications—regardless of the count in which they are brought—are moot.

### B.   The Court Lacks Subject-Matter Jurisdiction over Plaintiffs' Other Claims

Undeterred, Plaintiffs argue that the Court retains jurisdiction over their other claims for nominal damages and declaratory relief. ECF No. 37 at 5. But those claims for relief have jurisdictional problems of their own.

#### 1.   Nominal Damages

Plaintiffs maintain that the Court has jurisdiction over their remaining claims because it can award nominal damages. But because Plaintiffs are suing governmental entities and officers

in their official capacities,[4] ECF No. 7 ¶¶ 9–11, they must identify a waiver of sovereign immunity that provides the Court jurisdiction over a claim for damages, *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Welborn v. IRS*, 218 F. Supp. 3d 64, 84 (D.D.C. 2016).

Plaintiffs have identified no such waiver for nominal damages here. Their sole argument is that the APA's waiver of sovereign immunity applies to claims for nominal damages. ECF No. 41. That notion is based on the mistaken premise that, despite their name, nominal damages are not actually damages. ECF No. 41 at 3. But "the APA's waiver of sovereign immunity does not apply to suits for money damages, including nominal damages." *Jibril v. Mayorkas* (*Jibril I*), No. 19-cv-2457, 2023 WL 2240271, at *8 (D.D.C. Feb. 27, 2023) (cleaned up), *aff'd by Jibril v. Mayorkas* (*Jibril II*), 101 F.4th 857 (D.C. Cir. 2024); *Leonard v. DOD*, 38 F. Supp. 3d 99, 104 n.2 (D.D.C. 2014). Indeed, the D.C. Circuit has held that "the APA does not authorize suits seeking 'money damages' against the Government," which is why it is not an abuse of discretion for a district court to deny a plaintiff leave to amend an APA suit to add a claim for nominal damages. *Jibril II*, 101 F.4th at 870–71. Such claims cannot be brought under the APA; they must be brought against government officials in their individual capacities under *Bivens*. *Id.*

Grasping at straws, Plaintiffs cite *Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021), and *Bowen v. Massachusetts*, 487 U.S. 879 (1988), but neither changes this conclusion. Plaintiffs argue that "[t]he Supreme Court analysis in *Uzuegbunam* underscores that nominal damages are 'damages' in name only." ECF No. 42 at 5. But that case did not discuss sovereign immunity, and more to the point, the Court affirmed that "nominal damages are in fact damages."

---

[4] Because Plaintiffs sue Defendants—an agency and multiple officials—in their official capacities, the damages remedy the Supreme Court recognized in *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), does not apply. *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 369 (D.C. Cir. 1997); *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994).

*Uzuegbunam*, 592 U.S. at 291. *Bowen*, on the other hand, involved a claim for relief akin to specific performance, not retrospective relief like nominal damages. 487 U.S. at 895–901. In the end, neither case comes close to supporting Plaintiffs' argument. Thus, for the reason explained above, the Court lacks jurisdiction over their claims for nominal damages.

### 2. Declaratory Relief

Finally, Plaintiffs argue that the Court has subject-matter jurisdiction over their claims because they seek a judgment declaring that "Defendants have acted in bad faith" and that any past statutory violations "have harmed Plaintiffs." ECF No. 7 ¶ 258; *id.* at 79.[5] The Declaratory Judgment Act allows a court, "[i]n cases of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. As the language of the Act implies, it neither creates a cause of action, nor vests the federal courts with jurisdiction, nor waives sovereign immunity. *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011); *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008). Instead, the Act merely provides another remedy in cases already properly before the Court. *Walton*, 533 F. Supp. 2d at 114.

For this reason, to grant a declaratory judgment, the Court must have jurisdiction over the case for independent reasons. *Gjoci*, 2024 WL 4263775, at *5. But as explained above, the Court lacks such jurisdiction. In sum: to the extent Plaintiffs seek injunctive or mandamus relief, those claims are moot, and to the extent they seek nominal damages, sovereign immunity bars them. Thus, the Court must also dismiss Plaintiffs' claims for declaratory relief for lack of subject-matter

---

[5] Plaintiffs' operative complaint also asks the Court to declare that Defendants' challenged rules and policies were unlawful and that applying 8 U.S.C. § 1154(a)(1)(I)(ii)(II)'s time bar would violate Plaintiffs' rights. ECF No. 7 at 81. Because Plaintiffs have withdrawn these requests for relief, ECF No. 37 at 2, the Court does not consider them. Even so, considering them would not change the Court's conclusion that the case must be dismissed.

jurisdiction. *Id.*

## IV. Conclusion

    For all the above reasons, the Court lacks jurisdiction over Plaintiffs' claims. Thus, it will grant Defendants' motion and dismiss the case. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: May 13, 2025